IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AZANIAH BLANKUMSEE, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-19-179 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, | * | |
| WEXFORD HEALTH SOURCES, INC.[1] | * | |
| DAYENA CORCORAN, RICKY FOXWELL, | * | |
| CAPTAIN BARNES, LIEUTENANT ELLIOTT, | * | |
| DOCTOR K., MENTAL HEALTH SUPERVISOR | * | |
| Defendants | * | |

***

**MEMORANDUM OPINION AND ORDER**

Self-represented Plaintiff Azaniah Blankumsee, an inmate currently incarcerated at the Maryland Correctional Training Center, filed this lawsuit pursuant to 42 U.S.C. § 1983, presenting claims arising from the time he was incarcerated at Eastern Correctional Institution ("ECI"). Defendant Wexford Health Sources, Inc., ("Wexford") has filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment. (ECF No. 12). Additionally, the Department of Public Safety and Correctional Services ("DPSCS"), former DPSCS Commissioner Dayena Corcoran, Warden Ricky Foxwell, Captain Barnes, and Lieutenant Stephen Elliott (collectively, the "State Defendants") have filed a Motion to Dismiss, or in the

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants Wexford Health Sources, Inc., Captain Barnes, and Lieutenant Elliott. Service could not be obtained on "Doctor K" or "Mental Health Supervisor." The Complaint against them is dismissed without prejudice.

Alternative, a Motion for Summary Judgment. (ECF No. 24).  Blankumsee has filed Responses in Opposition.  (ECF Nos. 18, 24).

After considering the submissions, the Court concludes that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  Wexford's and the State Defendants' Motions (ECF Nos. 12, 24) will be granted.

## BACKGROUND

Blankumsee identifies himself as "an American with a disability"[2] because he suffers from anxiety disorder, obsessive control disorder, impulse control disorder, and schizophrenia. (Complaint, ECF No. 1 at 4).  Blankumsee states that he is psychotic, agitated, delusional paranoid, and violent.  He alleges that Defendants failed to: provide him adequate mental health care, provide adequate and qualified mental health staff, train correctional staff how to treat mentally ill inmates, hospitalize mentally ill inmates who cannot be treated in prison, and separate mentally ill inmates from those without mental illness.  He also claims Defendants "extended solitary and segregated confinement." (Complaint, ECF No. 1 at 2, 4).  In Blankumsee's view these are "forms of deliberate indifference."  (*Id*. at 4.).

Further, Blankumsee alleges that ECI staff "are failing to respond appropriately to the safety and welfare of the prisoners and forcing prisoners to remain on disc-seg (disciplinary segregation) past their sanction end date. (*Id.*).  He claims that he was placed "on disc seg with a 30 day sanction beginning 12-10-18 [and] ending on 1-8-19" but as of January 11, 2019, had not been removed from "disc seg." (*Id*.).  Blankumsee alleges that he filed an Administrative Remedy Procedure request ("ARP"), but ECI Warden Ricky Foxwell "approved of this unconstitutional action and dismissed the ARP." (*Id.* at 5).  Blankumsee seeks transfer to a

---

[2] The Complaint does not raise a claim under the Americans with Disabilities Act, *see* 42 U.S.C. §§ 12101 *et seq.*

hospital for mental health treatment, an order to exclude all Maryland prisoners with mental illness from solitary confinement, and $300,000.00 in compensatory damages. (*Id.* at 3). Notably, Blankumsee makes no specific mention of Wexford in the text of the Complaint.

Blankumsee also claims Defendants Elliott and Barnes placed him in segregation confinement past the end of the thirty day sanction he received on September 26, 2018. (Complaint, ECF No. 1 at 4-5). Blankumsee presented the same or substantially the same claim in an earlier case, *Blankumsee v. Foxwell, et al.,* Civil Action No. PWG-19-14 (D. Md. 2020). In that case, verified exhibits showed that Blankumsee pleaded guilty to multiple prison violations, including possession of a controlled substance and unauthorized use of a financial account, and as a result he was sanctioned with thirty days of disciplinary segregation and loss of diminution credits. While in disciplinary segregation Blankumsee expressed fears for his safety but provided no details. (*Id*. at ECF No. 25-2 at 11, 15; ECF No 25-3 at 2-3 ¶¶ 4, 6).[3] After the expiration of his 30 day disciplinary segregation, on October 25, 2018, Blankumsee was held on administrative segregation in a disciplinary segregation area until a "safe bed space" in administrative segregation became available. (*Id***.** at ¶¶ 6-8; ECF No. 25-7 at 4-5). On November 18, 2018, Blankumsee was transferred to a cell on an administrative segregation housing unit. (*Id.* at 3 ¶10). In that case, this Court found that Blankumsee failed to exhaust his administrative remedies as to this claim, and granted the State Defendants' motion for summary judgment.

---

[3]   Blankumsee was charged with multiple violations of the inmate rules of conduct in relation to a letter he sent to a person outside the institution requesting the person access a "Script Clinic" and obtain strips of suboxone (a contraband drug) and arrange "cash app" and Western Union accounts so that he could sell the suboxone strips in ECI. *See* Inmate Disciplinary Record, Event ID #2018-0059662. ECF No. 24-2.

**STANDARD OF REVIEW**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid*.; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235 236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286

(1986), or conclusory factual allegations devoid of any reference to actual events, see United Black *Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## DISCUSSION

**A.     Claims Against Wexford**

Wexford is a private corporation that has contracted with DPSCS to provide medical care at Maryland correctional facilities. Wexford has never provided mental health care to DPSCS inmates. (Affidavit of Joseph Ebbitt, ECF No. 12-4 at 1).[4]

Aside from naming Wexford in its caption, the Complaint makes no further mention of Wexford. For Wexford to be liable under § 1983, Blankumsee would have to allege facts

---

[4]     Wexford provided primary medical and utilization review services from July 1, 2012 until December 31, 2018 for inmates in the custody of DPSCS. From July 1, 2005 and June 30, 2012, Wexford served solely as the utilization review management provider for DPSCS. After December 31, 2018, Wexford ceased to operate in Maryland Mental health care, including mental health medication management and mental health counseling during the times at issue in this case were   provided by MHM Services, which is now known as Centurion. (Ebbitt Affidavit, ECF No. 12-4 at 1).

sufficient to show that Wexford had an official policy, practice, or custom that caused plaintiff's Eighth Amendment rights to be violated. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Although the Court liberally construes the allegations in a pro se complaint, Blankumsee's averments make no specific factual allegations against Wexford to allow the Court to infer the existence of an express policy or a widespread custom of constitutional violations. Accordingly, the Court will grant Wexford's Motion to Dismiss.

**B.      Claims against the State Defendants**

The State Defendants assert the Complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983 or they are entitled to summary judgment in their favor on the grounds that Blankumsee has not exhausted his administrative remedies, failed to establish they acted with deliberate indifference, and failed to demonstrate any other cognizable federal claim.

**1. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into court. *See Jones v. Bock*, 549 U.S. 199, 204, (2007). A prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action; rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. "[T]he PLRA's exhaustion requirement is mandatory,"

7

*Anderson v. XYZ Corr. Health Servs., Inc*., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies is mandatory, irrespective of the form of relief sought and offered through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 n.6, (2001). "Even when the prisoner seeks relief not available in grievance proceedings, . . . exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524 (2002), citing *Booth*, 532 U.S. at 741.[5]

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry, 286* F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Defendants contend that Blankumsee has not exhausted his administrative remedies by presenting his claims to the Inmate Grievance Office ("IGO"). Blankumsee has never filed a grievance with the IGO concerning his housing, safety, or mental health between September 26,

---

[5] The DPSCS has an established administrative remedy procedure for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Blankumsee, who has filed numerous pro se civil actions in this Court, is undoubtedly familiar with the ARP process as explained in a number of memorandum opinions issued in his cases. *See e.g. Blankumsee v. Foxwell,* Civil Action No. PWG-19-14 (D. Md. 2020); *Blankumsee v. Foxwell*, Civil Action No. PWG-18-106 (D. Md. 2020), ECF No. 20; *Blankumsee v. Graham,* Civil Action No. PWG-15-3495 (D. Md. 2017), ECF No. 37.

2018 to January 11, 2019. (Affidavit of F. Todd Taylor, Jr, Executive Director, Inmate Grievance Office, ECF No. 24-1 at 3 ¶ 5).

In his Reply as supported by his declaration, Blankumsee retorts that he was "denied all appeal forms" and therefore denied his right to exhaust his administrative remedies. ECF No. 26 at 4. He claims the grievance process was "unavailable to him," but does not allege what forms he requested, when he requested the forms, and who denied his requests. Instead, he directs attention to Defendants' Exhibit G. (*Id*.). Commissioner Wayne Hill's Response to Blankumsee's ARP ECI-2355-18 concerning the expiration of Blankumsee's sentence of 30 days of disciplinary segregation. ECF No. 24-7 at 6; *see also supra* p. 3. The Commissioner's Response dismissed the ARP, and provided that "no further action will be taken through the ARP process." ECF No. 24-7 at 6. Of import, the Response expressly states: "You may appeal this response by following the procedure on the back of this form." *Id.* Rather than supporting Blankumsee's conclusory assertion that forms were unavailable to him, however, this exhibit actually demonstrates that he was provided information to pursue his claims with the IGO.[6]

Other record evidence also belies Blankumsee's claim that the process was unavailable. During the times relevant here, Blankumsee accessed the administrative remedy process by filing ARP ECI 2016-18 on October 5, 2018 (ECF No. 24-4 at 2), ECI-2244-18 on October 29, 2018 (ECF No. 24-5), and ECI-0137-19 on November 20, 2019 (ECF No. 18-1 at 1). On June 14, 2018, Blankumsee filed a grievance with the IGO which alleged that his mail was returned to sender without his knowledge. That grievance was dismissed for failure to exhaust institutional administrative remedies prior to filing the grievance. *See Blankumsee v*. Foxwell, PWG-19-14,

---

[6]  Blankumsee made the same argument without success in Civil Action No. PWG-19-14. *See supra* p. 3.

Affidavit of F. Todd Taylor, ECF No. 25-1 at ¶5.  Blankumsee also filed numerous complaints about his mail delivery and other unrelated ARP requests, as reflected in *Blankumsee v. Foxwell*, PWG-19-14.[7]  Blankumsee's uncontroverted history of administrative remedy filings during this period directly refute his summary and unsubstantiated assertion that he was denied necessary forms so that the process was unavailable to him.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court also is mindful that in *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011), the Fourth Circuit made clear that the principle articulated in *Scott* does not license a court to reject one side's account as a matter of law if the "documentary evidence, such as a video," merely "offers some support for [the other side's] version of events." *Id.* at 276 (emphasis in original).  Documentary evidence like other facts, is reviewed in the light most favorable to the nonmovant.  *Brooks v. Johnson*, 924 F.3d 104, 111 (2019).  Nevertheless, "[i]ncontrovertible evidence relied on by the moving party . . . whose accuracy is unchallenged, should be credited by the court" when resolving a motion as a matter of law, "if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."  *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d. Cir. 2007)

---

[7]  The Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.' " *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In *Blankumsee v. Foxwell*, PWG-19-14, Blankumsee filed as exhibits copies of other ARP requests he submitted in ARP ECI-3227-17 on December 18, 2017 (ECF No. 1 -3 at 1) ARP ECI-2544-18 on December 12, 2018 (ECF No. 1-3 at 38); ARP ECI-2560-18 on December 14, 2018 (ECF No. 1-3 at 40); ARP ECI-2594-18 on December 20, 2018 (ECF No. 1-3 at 36), as well as numerous informal complaints about his mail on December 12, and 21, 28, 2017, March 17, 2018, June 13, and 29, 2018, September 7, and 14, 2018, and December 17, 2018 (ECF No. 1-3 at, 7, 9, 15, 17, 19, 21, 23, 25).

(applying *Scott* in context of motion for judgment as a matter of law). Blankumsee's history of filing numerous ARPs, a grievance to the IGO, and informal complaints "blatantly discredits" his assertion that he was denied access to the administrative remedy or grievance process. Accordingly, the Court will grant the State Defendants' Motion for Summary Judgment.

Further, even if Blankumsee's failure to exhaust his administrative remedies could be excused, his claims nevertheless fails.

**2. Deliberate Indifference to Mental Health Needs**

Blankumsee seeks to hold the State Defendants liable for failing to hospitalize him, for inadequate mental health care, and for failure to separate prisoners with severe mental illness from those without mental illness. These matters are the responsibility of the State's mental and medical health contractors and outside the purview of the State Defendants' employment pursuant to State Policy. (ECF No. 24-9). "Decisions on the type of . . . mental health treatment and need for transfer to outside resources are the responsibility of designated medical and mental health professionals." (*Id.* at 5). To the extent he claims the State Defendants failed to train correctional staff to work with prisoners with mental illness, Blankumsee provides no facts to substantiate this claim, nor does he describe how he was injured. An inmate may establish an Eighth Amendment claim by demonstrating that correctional officers "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Blankumsee does not plausibly alleged facts to suggest that the State Defendants denied or interfered with his purported need for mental treatment. He has failed to state a plausible Eighth Amendment claim.

### 3. DPSCS

Defendants argue the claims against DPSCS are barred under the Eleventh Amendment, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." States generally enjoy immunity from suits brought in federal court by their own citizens. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). Under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996). Absent waiver or a valid congressional abrogation of sovereign immunity, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *See Pennhurst,* 465 U.S. at 101–02 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity. This is because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471–72 (1985).

The DPSCS is an arm of the state. *See* Md. Code Ann., Corr. Svces §§ 2-101, 3-201 (2017 Repl. Vol.); *see also Clarke v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 316 Fed. App'x 279, 282 (4th. Cir. 2009) (stating "the Maryland Department of Public Safety and

Correctional services is undoubtedly an arm of the state for purposes of § 1983"). Neither the State of Maryland nor DPSCS has waived immunity in federal court for claims brought pursuant to § 1983. The claims against DPSCS and all other State Defendants in their official capacities must be dismissed.

Blankumsee does not assert he is raising claims against the individual defendants in their individual capacities, but for reasons discussed below, such claims would prove unavailing.

### 4. Claims Against Warden Foxwell and Commissioner Corcoran

Personal fault based upon a defendant's personal conduct must be shown to establish a claim for a under 42 U.S.C. § 1983. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal punctuation omitted)). Respondeat superior is not a recognized theory of liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution). To state a supervisory capacity claim, a plaintiff must allege the supervisor had actual or constructive knowledge a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization; and (3) there was an affirmative causal link between the supervisor's inaction and the constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994).

Blankumsee contends that "ECI and Maryland's department of corrections" subjected him to "cruel and unusual punishment," and "needs to be hospitalized because he is psychotic, increasingly agitated, and gripped by delusions" and "his conditions cannot be adequately treated in prison." (ECF No. 1 at 4). He allegedly "expressed [his concerns] to intel officers," and "many correctional staff." (*Id*.).

Blankumsee makes no specific allegations against Corcoran, and his only specific allegation against Foxwell is that he denied an unspecified ARP. (*Id*. at 5). Denying an ARP is not enough to establish personal participation in any alleged wrongdoing. Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994); *see Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998), *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) citing *Whitington v. Ortiz*, 307 Fed, Appx. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."). Blankumsee alleges insufficient facts for this Court to plausibly infer personal participation by either Warden Foxwell or former Commissioner Corcoran to support a claim for supervisory liability.

**5. Elliott and Barnes**

To establish deliberate indifference an inmate must allege "[a]ctual knowledge or awareness on the part of" the defendants to the substantial and excessive risk of harm to the prisoner. *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995). Deliberate indifference is a "higher standard for culpability than mere negligence or even civil recklessness." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Blankumsee claims that Elliott failed "to respond appropriately to the safety and welfare of the prisoners and forcing prisoners to remain on disc-seg [disciplinary segregation] past their sanction end date." (ECF 1 at 4.). As to Barnes, Blankumsee alleges that after expressing his safety concerns about disciplinary segregation,[8] Barnes advised that he would be placed in administrative segregation, not on "the compound." (*Id*.). Blankumsee alleges that on October 25, 2018, Barnes "falsely advised officers in [the] disc seg unit that he and Blankumsee never spoken, which Blankumsee alleges "knowingly" placed him "in harm's way after being made aware of the risk by plaintiff and IID." (*Id*. at 5).[9] Of import, Blankumsee provided no information to identify the inmates from whom he feared harm and was not assaulted in disciplinary segregation. *See supra* n. 8, 9.

---

[8] On September 26, 2018, while serving a 30 day sanction in disciplinary segregation, Blankumsee filed an ARP complaining that "due to a current string of events I am now in danger and feel afraid for my safety" because "a dude is under the impression that I dropped a kite on him" and "put a reward of 50 strips or $5000.00 for anyone who stabs me." (ECF No. 24-4 at 6; *see supra* p. 3). On October 1, 2018, the institutional ARP coordinator responded and dismissed the ARP pending resubmission with information: "Who is the inmate? What shift did you go to Unit 4? Who can you not be celled with? Who is harming you?" (ECF No. 24-4 at 4). Blankumsee resubmitted the ARP on October 3, 2018, stating he was "unfamiliar with the inmate's name," "can't take this pressure" because of his mental illness, "the only remedy is a cell in H.U. 5 [administrative segregation housing]." (*Id.* at 2-3). As earlier noted, it was determined for Plaintiff's safety, he should be placed on administrative segregation when his disciplinary segregation sentence ended, and he was transferred once a bed became available. (Elliott Affidavit, ECF No. 24-3 at 3 ¶¶ 7, 8).

[9] On October 28, 2018, Plaintiff filed ARP ECI-2244-18, alleging that "for the past 2 or 3 weeks I have complained of fears of an attack by fellow prisoners" and that he spoke to "Capt. Barnes from intel" and "Capt. Barnes advised me that I would not be put back on the compound but placed in admin seg then transferred." (ECF No. 24-5 at 3; *see also* ECF No. 1 at 4). Capt. Barnes allegedly told another officer that he did not remember ever speaking to Blankumsee. (*Id.*). ECI staff was "not acting reasonably to prevent me from being assaulted and contended the conditions of his confinement violated the Eighth Amendment. (*Id.*). On October 30, 2018, the ARP was dismissed with instructions to resubmit to [i]nclude how you have been harmed by staff to "[i]nclude names of the inmate enemies you are referring to. Be specific!" (*Id.* at 2). Blankumsee did not resubmit the ARP.

Neither Elliott nor Barnes assign inmates to housing. (Elliott Affidavit, ECF No. 24-3 at 4 ¶¶ 15, 16). Nor does Blankumsee explain how Elliott failed to respond to his safety concerns or "forced" him to remain on disciplinary segregation after the sanction end date. Moreover, Blankumsee does not identify what constitutional provision or federal law Barnes violated by "falsely advis[ing]" officers that he had never spoken with Blankumsee.

Blankumsee asserts he "requested housing in any other housing unit and was denied" and instead was "punished for requesting safety." (ECF No. 1 at 5). He contends that he was "denied all rights of general pop[ulation], admin seg, or PC [protective custody]." (*Id.*). He alleges that he was placed "back on disc seg with a 30 day sanction beginning 12-10-18 [and] ending on 1-8-19" but as of January 11, 2019, had not been removed from "disc seg." (*Id.*)

On December 10, 2018, Blankumsee was charged with assault or battery on an inmate, in violation of prison Rule 102, and placed on administrative segregation pending adjustment hearing status. (ECF No. 24-8 at 9; Elliott Affidavit, ECF No. 24-3 at 4¶ 13; ECF No. 24-8 at 10.). Blankumsee pleaded guilty and was sentenced to 30 days on disciplinary segregation and a loss of 60 diminution credits. (ECF No. 24-8 at 4-6). When the disciplinary segregation sentence ended on January 8, 2019, Blankumsee remained in his cell because there was no space available on administrative segregation. Plaintiff moved to administrative segregation on January 14, 2019. (ECF No. 24-6 at 2; ECF No. 24-3 at 4 ¶¶ 13,14).

Liberally construed, these allegations raise a Fourteenth Amendment claim. To determine if a particular condition of confinement violates a prisoner's due process liberty, a court must "compare the conditions to which [the inmates] were exposed . . . with those they could expect to experience as an ordinary incident of prison life." The inmate must demonstrate that the condition imposed an atypical and significant hardship in relation to the general

population of inmates.  *See Incumaa v. Stirling*, 791 F.3d 517, 529  (4th. Cir. 2015) (citing *Sandin v. Conner,* 515 U.S. 472, 483 (1995), and *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015)).  Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)).  Blankumsee does not specify how the one-week delay in removing him from disciplinary segregation subjected him to an atypical and significant hardship.  "A temporary assignment to segregated confinement—thirty days or even six months, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is not atypical or a significant hardship."  *Gatewood v. Juknelis,* Civil Action No. ELH-16-1644, 2017 WL 1491361 *8 (April 26, 2017) (citing *Sandin*, 515 U.S. at 485-86; *Beverati* 120 F.3d at 504 (finding six months under conditions dictated by administrative segregation policies was not atypical under *Sandin*)).

Blankumsee was placed on disciplinary segregation pursuant to a guilty plea, and held over for six days[10] until a bed became available on administrative segregation where he could be safely housed in light of his claims of danger.  Blankumsee alleges no conditions to demonstrate atypical and significant hardship.  Under these circumstances, he fails to allege a claim of constitutional magnitude.

---

[10]  The holdover from October 25, 2018 until November 18, 2018, lasted less than thirty days. *See supra*, p. 3.

## CONCLUSION

For reasons set forth in this Memorandum Opinion, "Dr. K" and "Mental Health Supervisor" are dismissed without prejudice. Wexford's and the State Defendants' Motion's will be granted.

## ORDER

For reasons stated in the foregoing Memorandum Opinion, it is this 4th day of August, 2020, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. "Dr. K" and "Mental Health Supervisor" ARE DISMISSED without prejudice;

2. The Clerk SHALL AMEND the docket to reflect the correct names and titles of Defendants Wexford Health Sources, Inc., Captain Barnes, and Lieutenant Elliott;

3. Wexford's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, (ECF No. 12) IS GRANTED;

4. The State Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, (ECF No. 24) IS GRANTED;

5. The Clerk SHALL SEND a copy of this Order and Memorandum Opinion to Plaintiff and to counsel of record; and

6. The Clerk SHALL CLOSE this case.

                                                /S/
                                          Paul W. Grimm
                                          United States District Judge